IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGININA

Richmond Division

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH GAB ID: CRU54D3R THAT IS STORED AT PREMISES CONTROLLED BY GAB AI, INC. | Case No. 3:22sw216<br><br>**Filed Under Seal** | <br>Nov 23 2022 |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, David M. Crisafi, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Gab AI, Inc (hereafter "Gab") to disclose to the government records and other information, including the contents of communications, associated with the above-listed Gab ID that is stored at premises owned, maintained, controlled, or operated by Gab, a company headquartered at 700 North State Street, Clarks Summit, Pennsylvania, 18411. The information to be disclosed by Gab and searched by the government is described in the following paragraphs and in Attachments A and B.

2. Your affiant is a law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I have been employed as an FBI Special Agent since September 2004. I have extensive experience investigating all types of crimes including criminal and national security computer intrusions, child pornography, domestic and international terrorism, and bank/wire

fraud. As an FBI SA I have received extensive training in the investigation of violations of federal and state law. I am currently assigned to the Richmond Division of the FBI where I investigate domestic terrorism matters.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts as set forth in this affidavit, there is probable cause to believe that the information described in Attachment A contains evidence, contraband, instrumentalities, and/or fruits of violations of **Possession of a Firearm** (26 U.S.C. § 5861(d)), **Possession of a Firearm and Ammunition by a Convicted Felon** (18 U.S.C. § 922(g)), and **Interstate Communication of Threats** (18 U.S.C. § 875(c)), as further described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## STATUTES

6. **Possession of a Firearm and Ammunition by a Convicted Felon** (18 U.S.C. § 922(g)). Federal Code prohibits "any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or

foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

7.     **Possession of a Firearm** (26 U.S.C. § 5861(d)).  The National Firearms Act in Federal Code prohibits the receipt, possession, production, or transport of an unregistered "firearm," which § 5845 defines the term "firearm" to include "destructive devices."

8.     **Interstate Communications of Threats** (18 U.S.C. § 875(c)).  Federal Code prohibits the interstate communications of true threats to injure or kidnap any other person.

## PROBABLE CAUSE

9.     The Federal Bureau of Investigation (FBI) is conducting an investigation into XAVIER LOPEZ, after learning of that individual's social media postings calling for the destruction of Israel and New York City, as well as the deaths of "Jews" and "Yankees."

10.    Your affiant learned that LOPEZ was associated with an Instagram account with username "slenderman14w."  Your affiant knows through his training and experience that "14w" is often used by white supremacists as a reference to "14 words."  According to the Anti-Defamation League web site adl.org, 14 Words "is a reference to the most popular white supremacist slogan in the world: "We must secure the existence of our people and a future for white children."  Through open-source search your affiant viewed the publicly visible content on this Instagram page.  The content included anti-Semitic memes and white supremacist content.  One post declared that "race traitors" are people of European ancestry that fraternize with "blacks," and further, that miscegenation (procreation between individuals of different race) is "race treason," and that race treason is a Capital Offense and will be punished by Death.

11. In August 2020, LOPEZ was arrested for vandalism in Henrico County. Your affiant reviewed video related to this offense and observed LOPEZ, wearing camouflaged pants and carrying a blue flag with a white star, cutting the tires of another person's vehicle. The flag was identified through open-source searches as a "Bonnie Blue" flag. This flag is associated with the Confederate Army during the United States Civil War. During his arrest and transport to jail, LOPEZ attempted to open a pocketknife. The transporting officer pulled over and removed LOPEZ from the police vehicle. Your affiant reviewed Body Worn Camera footage that showed LOPEZ assault the officer when LOPEZ was taken out of the vehicle. LOPEZ was charged with assaulting law enforcement based on this interaction.

12. As part of his plea agreement, LOPEZ pled guilty to Felony Vandalism. As a convicted felon LOPEZ was thereafter (and remains) legally prohibited from possessing firearms or ammunition. LOPEZ was ordered to surrender all firearms, ammunition, and firearms components to Henrico Police. In December 2021, a family member turned over LOPEZ's property to Henrico County Police. LOPEZ's property included more than 1,000 rounds of 5.56/.223 ammunition, 15 AR-style magazines with 30 round capacity, two 40 round AR-style magazines, four AR-15 80% lower receivers (also referred to as "80% lowers"), three complete AR-style upper receivers, one jig kit for AR-15 80% lower receivers, four AR-style trigger/handle kits, and four AR-style stocks.

13. Your affiant knows that a lower receiver is an integral portion of a functioning firearm, connecting to the other pieces of a finished firearm and to which the trigger group, upper receiver, and frame are attached. A completed lower receiver is a "firearm" under United States Code, and is required to bear a serial number. An "80% lower" is an unfinished lower receiver. This unfinished receiver does not have certain holes drilled out that would be required to for the

firearm to function. As the "80% lower" is not a completed "firearm" for purposes of United States Code, it does not require the background check and traditional requirements for purchasing a working firearm. Your affiant also knows that a "jig kit for AR-15 80% lower" is a device designed to properly line up the unfinished lower receiver to make the necessary modifications needed to create a completed, functioning firearm.

14. LOPEZ was released from state custody on June 28, 2021. LOPEZ returned to his previous residence at 1419 Fort Hill Drive in Henrico, an 864-square-foot, single-family home. Investigation has confirmed that this residence is assigned the Internet Protocol (IP) address 73.12.94.90, which is serviced by the internet services provider Comcast.

15. Your affiant reviewed video taken on July 4, 2021, that showed LOPEZ and another family member—less than a week after LOPEZ's release—inside the Field and Stream store located in Charlottesville, Virginia. This store sells hunting and firearms items. LOPEZ was observed going to the firearms section and stopping several times. LOPEZ can be observed crouching down to look into a glass case with handguns inside. LOPEZ did not purchase any items.

16. In December 2021, an employee of Cabela's was interviewed in relationship to LOPEZ. Cabela's is a hunting equipment and firearms store in Henrico County. The employee recalled LOPEZ being in the store and having a conversation with him about firearms. LOPEZ indicated that he wanted to build a .308 caliber rifle with an 11.5-inch barrel. LOPEZ told the Cabela's employee that he (LOPEZ) wanted to find 168 grain Winchester 308 ammunition to use with that rifle.

17. In October 2022, your affiant learned that several purchases had been made online and those items subsequently delivered to 1419 Fort Hill Drive, Henrico (that is, the defendant's residential address). Among these purchases was a "G19 Build Kit" sold by US Patriot Armory. It

was determined from an employee of US Patriot Armory that this kit was a complete Glock 19 (9mm semi-automatic pistol) with the exception of the Receiver or Frame. The kit included the slide, barrel, a lower parts kit, an upper receiver build kit, and a magazine. The package was purchased by the billing name of "John Jackson," utilizing IP Address 73.12.94.90.  The package was delivered on September 1, 2022, and signed for by an individual at LOPEZ's residence. Similar to the "80% lower" recovered from LOPEZ in the past, your affiant knows that unfinished Glock receivers and jig kits are available for purchase online. As the lower receiver is not fully completed, it does not require the traditional background checks and requirements needed to legally purchase a working firearm.

18.   On November 25, 2019, LOPEZ was identified through open-source investigation as using Gab account "@XLliving."  LOPEZ utilized his photo on this profile and had provided a username of Xavier Large Lexington.  LOPEZ's Gab account was open to the public and your affiant has reviewed posts by LOPEZ that advocate for *(inter alia)* the use of violence with firearms.  Representative posts on the account include:

   a. "If the path to freedom cannot be cleared by words alone, it must be paved with the blood of those who obstruct it.  This is the word of the Lord."

   b. "there's no real IQ in communists, as communism is a disease.  They aren't people, they're remnants of people who were infected and in becoming infected stopped believing in human rights.  Since they no longer believe in human rights, they're forfeiting their status as humans.  This means that the communists are real life zombies.  The only cure is eradication, for all else has failed.  The best implementation of the cure can be found in the form of capsules of lead and copper applied at high speed."

    c. "maybe we should start an armed insurrection against the commie scum. Pacifism isn't working, we need war to end all communist presence. Eradicate the disease, don't reason with it. Violence is a last resort but a resort nonetheless, too much peace has us forgetting that very important fact."

19. Your affiant reviewed records from Gab.com for the user name "Cru54d3r." This account was associated with the IP address 73.12.94.90 and the email address thirdpositioncrusader@protonmail.com. Public posts and comments posted by "Cru54d3r" included highly anti-Semitic, white supremacist, and racist content similar to previous social media accounts believed to be associated with LOPEZ during this investigation. The profile picture for the "Cru54d3r" Gab account includes an image of the Bonnie Blue flag along with a Confederate flag with a Swastika in the middle. The Bonnie Blue flag, as described above, was the flag LOPEZ was filmed carrying while committing vandalism in August 2020.

20. Among the content posted by "Cru54d3r" were links to video tutorials on how to use a 3D printer to print lower receivers for handguns. Other posts by "Cru54d3r" advocated for firearm possession by convicted felons; the collection and possession of various types of ammunition; the online purchase of firearm parts kits through the use of pseudonyms; the use of firearms to attack law enforcement; and the manufacture of homemade explosive devices. Gab posts made by "Cru54d3r" include, e.g.:

    a. "All real weapons should be built, not bought, this can be done with a 3D printer and a parts kit, both of which can quite easily be bought untraceably, especially if everyone in the group holds mail for each other, and any debit gift cards used are purchased with cash and registered under a pseudonym when necessary, ammo and magazines should be standardized for each type (carbines being .223/5.56 and

      STANAG mag compatible, shotguns being .12 gauge, handguns being 9mm and Glock mag compatible, etc.)…"

b. "@Lilr and no, being a convicted felon is not at all a valid excuse for remaining unarmed, stay strapped or get clapped. If you don't have a gun yet, at least acquire the means to make one, parts kits are everywhere and 3d printers are pretty cheap now too. You can also have a decent side hustle selling your builds to our white brothers across the pond and all around the world for monero over TOR or isp."

c. "… have absolutely zero regard for the "law and order" of the kike system that hates you…"

d. "@541er now is the time. Or whenever you decide to act. Nobody's going to be a hero. It's up to you. And me. And every other Fascist Revolutionary to take matters into our own hands. Whatever action you are able to do and get away with. Just do it. Be smart and plan it out. Set a date. Slowly and methodically select your target and gather the necessary info and supplies. War is an art. Become the artist. Your target is your canvas. The blood you will spill and shed in your act is the paint, your action is the brush. Make a masterpiece. Select your target wisely and learn from the mistakes of your predecessors. Ensure that no matter what it hurts the kike system more than the cause. Brevik[1] was the best example of this thus far, but we can do even better…."

---

[1]     Anders Behring Brevik is a Norwegian citizen convicted of killing more than 70 people on July 22, 2011 in two separate incidents involving Brevik's use of both explosives and firearms. Brevik explained that his decision to conduct this mass killing was his fervent belief in far-right ideologies.

    e. "… learn how to pick and bypass locks in order to covertly enter into the places necessary to get what you need and/or accomplish any objective you set for yourself…"

    f. " . . . Have no tolerance for cops. If they come to your house, that's your cue to shoot them. If you see cops at your white neighbor's house, that's also your cue to shoot them."

    g. " . . . Manufacture pipe bombs using match heads or mix acetone and either 35% peroxide or Styrofoam if necessary to manufacture what you need in order to defend yourself against the niggers or police…"

21. As noted above, records from Comcast, Inc. reflect that IP address 73.12.94.90 is associated with internet service provided to 1419 Fort Hill Drive, the residence of Xavier LOPEZ and one other family member. LOPEZ has been interviewed by FBI personnel inside this residence and has been observed entering and exiting the residence on numerous occasions.

22. On November 13, 2022, law enforcement officers executed a state search warrant at LOPEZ's residence at 1419 Fort Hill Drive. Among the items recovered during the search of that residence were a 3D printer, firearm components, a G19 build kit, 6 smoke bombs, 1 smoke grenade, smokeless powder, 9mm ammunition, 8 devices that appear to your affiant to be Molotov cocktails or similar destructive devices, stormproof matches, a 3D printed handgun frame, rifle sling, and assorted rifle parts.

## **INFORMATION REGARDING GAB**[2]

23. Gab AI, Inc. is a United States company that builds communication software, to include gab social and gab chat.

24. Gab provides a variety of services that can be accessed from gab.com or their mobile application. As described in further detail below, the services include social media platform, instant messaging, and file storage:

   a. Gab social is a social media platform where users can post freely comments, photos, and videos, as well as repost other users' content.

   b. Gab chat allows users to private message each through encrypted chat messaging in both private and public chat rooms.

25. Gab services are accessed through the use of a user ID an account created during the setup of a Gab account.

26. Gab users necessarily utilize Gab servers are secured under Cloudflare, which is an American content delivery network and DDoS mitigation company.

27. In my training and experience, evidence of who was using a Gab ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

28. For example, the stored communications and files connected to a Gab ID may provide direct evidence of the offenses under investigation. Based on my training and experience,

---

[2] The information in this section is based on information published by Gab on its website.

instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

29. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Gab can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

30. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

31. Therefore, Gab's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Gab's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

32. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Gab to disclose to the government copies of the records and other information (including the content of communications and stored data) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## **CONCLUSION**

33. Based on the forgoing, I request that the Court issue the proposed search warrant.

34. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

35. The government will execute this warrant by serving the warrant on Gab AI, Inc. Because the warrant will be served on Gab, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

David M. Crisafi
Special Agent
Federal Bureau of Investigation

Subscribed and attested to me by the affiant in accordance
with the requirements of Fed. R. Crim. Pro. 4.1 by telephone
this 23rd day of November 2022.

/s/ MRC
Hon. Mark R. Colombell
United States Magistrate Judge

13

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with CRU54D3R ("the account") that is stored at premises owned, maintained, controlled, or operated by Gab AI, Inc., a company headquartered at 700 North State Street, Clarks Summit, Pennsylvania, 18411.

**ATTACHMENT B**

**Particular Things to be Seized**

**I.      Information to be disclosed by Gab**

To the extent that the information described in Attachment A is within the possession, custody, or control of Gab, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Gab, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Gab is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.      All records or other information regarding the devices associated with, or used in connection with, the account, including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International

Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c. The contents of all emails associated with the account creation until present, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d. The contents of all instant messages associated with the account from account creation until present, including stored or preserved copies of instant messages sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e. All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers.

f. All records pertaining to the types of service used;

g. All records pertaining to communications between Gab and any person regarding the account, including contacts with support services and records of actions taken; and

h. All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Gab.

Gab is hereby ordered to disclose the above information to the government within **14 days** of issuance of this warrant.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes contraband, fruits, evidence and/or instrumentalities of violations of 18 U.S.C. 922(g)(1), 26 U.S.C. § 5861(d), and 18 U.S.C. § 875(c) involving XAVIER LOPEZ, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.     The identity of the person(s) who created or used the Gab ID, including records that help reveal the whereabouts of such person(s);

b.     Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crimes under investigation and the account subscriber;

c.     Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

d.     Evidence indicating the subscriber's state of mind as it relates to the crimes under investigation; and

e.     Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.


This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the

disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.